Arthur Samuel O'Neil,

*vs.*

E. I. duPont de Nemours and Company.

*New Castle, Aug.* 6, 1919.

Employe of powder company, who invented a new process for making powder and disclosed it to the company for determination of value, the company concealing its use in the manufacture of large quantities of powder, and the employe relying on a certain bonus plan of the company for remuneration, *held* without a remedy in equity against the company to compel cancellation of assignment of his patent rights or reassignment thereof; the remedy at law for breach of contract for compensation being adequate.

Statement of the Case. A demurrer to the original bill was sustained (*ante p.* 76, 106 *Atl.* 50) and the complainant filed an amended bill, to which the defendant has demurred. The case was heard on bill and demurrer, the material facts being set forth in the opinion of the Chancellor.

*Robert Penington,* for complainant.
*William S. Hilles* and *J. P. Laffey,* for defendant.

The Chancellor. A general demurrer to the original bill having been sustained because the remedy, if any there be under the allegations of the bill, was in a court of law and not in the Court of Chancery, an amended bill was filed and a general demurrer thereto filed.

It is difficult to grasp the real ground on which the complainant bases his claim to equitable relief in his amended bill. As I understand the amended bill, this is his claim:

Having discovered a new process for making powder, he in 1910 disclosed it to the defendant in order that it should determine whether it was valuable to it, and report thereon to the complainant. Without his knowledge the company in 1914 found it valuable and thereafter made large quantities of powder by the use of it, but made no report thereof to the complainant. About April, 1916, he learned that an application for a patent on the process was about to be made by other persons, and protested against it, with the result that an application was made by him and at the request of the defendant company the application was assigned

to it without any consideration named or paid, except a nominal one of $5, which was never paid. At this time the complainant did not know that the process had been found useful, and that much powder had been made by the use of it. He knew of the bonus plan, and that under it employes of the company had been rewarded, and knew also that independent of the bonus plan they had been rewarded because useful to their employer.

He then says in paragraph 20 of the amended bill that being aware of these benefits which had come to useful employes, and relying on the rewards of the bonus plan, "and with the express understanding given him by the officers, agents and attorneys of the defendant company that he would be amply compensated for the value of said process and invention, and relying upon the promises and inducements so held out to him by the said officers, agents and attorneys of the defendant company," he assigned the application for patents on the process. At that time he had no knowledge of the use which the company had made of the process, and obtained such knowledge after March, 1918. Afterwards he was offered a reward under the bonus plan and refused to accept it.

In paragraph 24 of the bill the complainant restates his grounds for equitable relief to be (1) deceit by the company through its promises to amply compensate the complainant for the value of his process; (2) its concealment of the use made thereof; (3) by the promises of reward set out in the bonus plan; and that the assignment by him of the application for a patent was made without consideration as a result of this deception, concealment and promises.

It may be that he considers his right to relief in equity to be this: He had given the defendant the right to experiment with his process, being promised compensation for it if it proved successful, or if the defendant used it for making powder; that notwithstanding it was a success and the defendant used it to make large quantities of powder, it did not report the matters to him; that being ignorant of such use he assigned to the defendant the application for patent on the process, being induced to do so without consideration because the bonus plan was known to him as a method used by the company to reward its employes for such things; that the bonus plan did not give adequate reward; and

that when he made the assignments he did not know the defendant had used his process in making powder in large quantities.

The complainant does not complain that he made the assignment relying on promises of compensation under the bonus plan, which he *afterwards* found out to be inapplicable to his case, and did not entitle him to enforce a reward. Such a claim if it had been made and standing alone would suggest a right to obtain here a reassignment of the patents and compensation for the use thereof, though no opinion is expressed on the subject.

Now it seems very clear that the concealment of the use made of the process in the manufacture of powder prior to March, 1918, does not of itself, or in connection with anything else, give or enlarge any right to any relief in equity. If at the time the process was first submitted to the company for experimentation, or later when the application for a patent on the process was assigned to the company, there were, as is alleged, promises and agreements by the company to compensate the complainant for the use made thereof, and such use was made thereof, then the only question would be as to the right to compensation for breach of such agreement. The only effect of the concealment probably was to relieve the complainant of the possible obstacle of the statute of limitations to an action at law, based on the breach of contract. Of course, if there had been a subsequent agreement as to the price to be paid the complainant for the use of his process, such concealment might become relevant to show unfair dealing; but there was no price fixed.

So, too, a reliance on the bonus plan and the failure to obtain under it a reward which he deemed adequate did not give him a right in equity to annul the assignment or enforce payment of a money award for the use made of the process. There was no allegation of misrepresentation as to the terms of the bonus plan, or promise of modification of it so as to make it applicable to the complainant. For aught that appears he was aware of its provisions, its purpose, scope and arbitrary limitations, and knew that all rewards under it were gratuitous and not given as of right.

It is equally certain that the knowledge which the complainant had that some officers and employes of the company had been largely rewarded by promotions and otherwise, both under and

independent of the bonus plan, has no bearing on the right of the complainant for compensation for the use of his process.

In the final analysis, then, it seems that under the amended bill, as under the original bill, the rights of the complainant, if any, are in a court of law and not in equity. His action, if any, is for breach of a contract to compensate him for the use made of his patent. In sustaining the demurrer to the original bill, reasons are given which apply to the amended bill, and need not be repeated here.

If the holder of a patented process assign it without any consideration then or since received, relying on prior or contemporaneous promises that the assignor would be amply compensated by the assignee for the use of the process, and there seems to be no real obstacle to the enforcement of the compensation for the use so made of the process, then there is no right to a cancellation of the assignment or to a reassignment of the patent to the complainant.

Taking everything most favorably to the complainant the same difficulty would meet the court at the end as it now does at the beginning of the cause. This court when its jurisdiction is challenged is bound to keep within the limits of its power. The defendant is entitled to a trial by a jury when damages are sought from it for breach of contract, and this court has no right to deprive it of its right to that mode of adjudicating its rights.

The demurrer to the bill will be sustained, and a decree entered dismissing the bill for want of equity.